**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LOUISE MINTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 15 C 4323** |
| ) | |
| **MARK S. DIAMOND, UNITED RESIDENTIAL** ) | |
| **SERVICES & REAL ESTATE, INC., DENNIS** ) | |
| **BOTH, GARY THOMAS BOHN, and** ) | |
| **PRIMARY TITLE SERVICES, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Louise Minter filed suit against five defendants, alleging that they engaged in a fraudulent home equity-stripping scheme in which they unfairly and misleadingly induced her to obtain a reverse mortgage on her home and then deprived her of the proceeds. Minter claims the defendants violated the Civil Rights Act, 42 U.S.C. § 1981; the Fair Housing Act, 42 U.S.C. § 3605; and the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505. She also asserts state-law claims for conversion, civil conspiracy, and breach of fiduciary duty. One of the defendants, Dennis Both, has moved for summary judgment on all of the claims asserted against him. For the reasons stated below, the Court denies Both's motion.

### Background

The Court takes the facts in the light most favorable to Minter, the non-moving party. Minter is an elderly African-American woman who owns a home on the west side

of Chicago. She lives there with her granddaughter, LaShon Minter Williams, and her granddaughter's husband, Arik Williams. Minter acquired title to the home in 1992 and included LaShon Williams's name on the deed, because Minter wants her to own the home when she passes away. (The Court will refer to LaShon Minter Williams as "Williams" for the remainder of this opinion.) In January 2011, Minter allowed Williams and Arik to take out a mortgage on the home in order to make improvements to the property.

In March 2013, Mark Diamond came to Minter's door and offered his remodeling services. He explained to her that there was a free government program for senior citizens that would allow her to remodel her home. He described possible improvements to her property, including removing her bathtub and adding a shower with a sliding door, building a new porch, and upgrading the kitchen and bedroom. He told her that she could apply for the program and that these improvements would not cost her any money.

Sometime after this initial conversation, Diamond contacted Williams to discuss the fact that her name was on the title to the house. He told her that she would need to sign her interest over to Minter in order for Minter to be eligible for the free home repairs. Diamond told Williams that he would restore her name to the title after Minter had been approved. An employee at Primary Title Services, LLC prepared a quitclaim deed. Minter was unaware of this conversation

Soon after the initial conversation in March 2013, Diamond returned to Minter's home with Gary Bohn, an employee of American Fidelity Financial Mortgage Services, Inc., and Jaclyn Unger, an insurance agent with AXA Advisors. Diamond told Minter to

sign several documents so that he could begin the home improvements. She believed that these documents were an application for the free program that Diamond had told her about. In fact, the documents were a loan application for a reverse mortgage that Bohn later submitted in Minter's name. Minter was unaware that the defendants were applying for a reverse mortgage on her behalf. Unger also submitted an application for life insurance in Minter's name.

Federal regulations require an applicant for a reverse mortgage to receive counseling to ensure that she understands the nature and consequences of the loan. A borrower who completes the counseling receives a certificate of home equity conversion mortgage (HECM) counseling during the loan application process. Minter does not recall ever receiving any type of counseling regarding a reverse mortgage. But in March 2013, someone from Diamond's office faxed to the reverse mortgage lender a certificate of HECM counseling bearing Minter's name.

Around April 2013, both Williams and Arik signed the quitclaim deed, though not at the same time. The deed was later notarized by Dennis Both, a notary and licensed attorney. Mr. Both[1] notarized the deed, although Minter alleges that he was not present when either Williams or Arik signed the document.

In May 2013, Diamond again called Both to request his notary services. He and Diamond returned to Minter's home, where Diamond asked her to sign more documents. Mr. Both told Minter and Williams that he was there so that Minter "could sign the documents for Mark to start the repairs on the house." *See* Def.'s Statement of

---

[1] When Both's name is used at the start of a sentence, the Court will refer him as "Mr. Both" in situations where it is needed to avoid confusion, given that his last name is also a pronoun.

Uncontested Facts Submitted in Supp. of Summ. J. (SUCF), Ex. Q (LaShon Williams Dep.) at 244:21–245:4. Unbeknownst to Minter, she had been approved for a reverse mortgage and was signing documents to finalize the loan. She did not know that she was borrowing money. Mr. Both notarized the mortgage agreement, which was later recorded in June 2013. Neither Both nor Diamond informed Minter that she had three days in which she could change her mind and reverse the transaction. Further, neither told Minter that she would receive a payout of the loan proceeds, nor did they discuss with her whether she would like to have those funds deposited electronically instead of distributed via check. Mr. Both did tell Minter and Williams that they were not obligated to make any payments under this agreement. Diamond paid Both $250 for notarizing the documents.

At this same time, Diamond also had Minter sign a construction contract for home improvements with a total estimated cost of $46,500. The contract listed a number of repairs, including modifications to the bathroom and rebuilding the front and rear porches.

On May 23, 2013, the lender for the reverse mortgage wired the loan proceeds in the amount of $45,292.07 to Primary Title, which deposited them in an escrow account. Primary Title then issued a check payable to Minter for this amount. Primary Title gave the check to Bohn, who gave it to Diamond. Diamond again visited Minter at her home and told her she needed to sign another document in order for Diamond to start the work. In fact, Diamond had Minter endorse the check without knowing what she was doing. Diamond deposited the check into his business account.

According to Minter, the home repairs did not begin immediately after this

transaction.  Although one of Diamond's subcontractors eventually came to perform some work in the bathroom, it was shoddy and incomplete.  Minter and Williams repeatedly called Diamond to ask when his men would be returning to complete the work.  Diamond promised that work would resume, but it did not for many weeks. Around July 2013, Diamond's subcontractors began work on the kitchen by removing all of the appliances and cabinets but then failed to return for over a month.  In September 2013, Diamond claimed the work had been completed, but Minter found numerous issues with the construction and places where the house remained unfinished.  Minter and Williams tried to get Diamond to come back to finish the job and fix the house, but he would not.  Eventually, Minter had to hire another contractor to complete the repairs.

In December 2013, Diamond came to Minter's house and asked her to sign a completion certificate stating that she was completely satisfied with the work he performed.  Minter refused.

Throughout these events, Minter and Williams contend they were unaware that Minter had taken out a reverse mortgage or of the effect this loan would have.  The defendants did not tell Minter and Williams that, by taking out a reverse mortgage, they paid off the mortgage they took out in 2011.  The defendants did not tell them that when the borrower of a reverse mortgage dies or moves out, the entire loan must be repaid in order to keep the lender from taking possession.  Although Minter was aware of the life insurance policy, the defendants did not tell her that they took out the life insurance policy so that, in the event of her death, Williams would receive a payout that she could use to pay off the reverse mortgage.  For this reason, Williams and Minter were unaware that they needed to keep up with payments on the life insurance policy in order

to keep the house.

As a result of these events, Minter lost the equity in her house.  The house is now encumbered by a lien of over $116,300 that accrues interest and charges each month.  And Williams no longer has any ownership interest in the property.

Minter and Williams later learned that defendants had engaged in similar behavior in the past.  Between 2000 and 2013, Diamond was sued by twelve homeowners who made similar allegations of fraud based on mortgage and home repair transactions.  Diamond was sued in 2003 by the Federal Trade Commission and the Illinois Attorney General.  In 2009, the Illinois Attorney General again sued him on behalf of homeowners.  In many of these proceedings, Both represented Diamond as his attorney.  As of May 2013, eighty-four individuals had filed complaints with the Illinois Attorney General about Diamond's practices.  In over half of these cases, Both had provided the notarization services for the mortgage transactions.  In 2016, a circuit court in Cook County entered a permanent injunction against Diamond and his companies and ordered him to pay restitution of over $2 million.

Minter filed this suit in May 2015, bringing claims against Diamond, United Residential Services and Real Estate, Inc. (Diamond's company), Both, Bohn, and Primary Title.  In count 1, Minter alleges that Diamond, United, and Bohn violated the Civil Rights Act by intentionally targeting individuals on the basis of race for their fraudulent scheme.  Minter alleges in count 2 that Diamond and Bohn violated the Fair Housing Act by intentionally discriminating against Minter on the basis of her race during a real estate transaction.  In count 3, Minter alleges that Diamond and Bohn violated the Fair Housing Act because their loan scheme had a disparate impact on

African Americans.  Minter alleges in count 4 that Diamond, United, and Bohn are liable for conversion for taking possession of Minter's loan disbursement.  In count 5, Minter alleges that Diamond, United, Both, and Bohn engaged in deceptive conduct in violation of the ICFA.  Minter alleges in count 6 that Diamond, United, Both, and Bohn engaged in unfair conduct in violation of the ICFA.  In count 7, Minter alleges that Diamond, United, Both, and Bohn engaged in a civil conspiracy to unlawfully deprive Minter of the equity in her home.  Minter alleges in count 8 that Primary Title breached its fiduciary duty as the closing agent for the lender.

In April 2016, Minter stipulated to a dismissal of all her claims against Bohn.  In November 2016, Minter voluntarily dismissed count 8 with prejudice pursuant to a settlement with Primary Title.

In this order, the Court considers Both's motion for summary judgment.  The Court therefore addresses only counts 5, 6, and 7 as brought against Both.

### Discussion

Both has moved for summary judgment on all three of the claims brought against him.  He argues primarily that he did not personally engage in any deceptive or unfair conduct as required by the ICFA.  He also challenges the conduct on which Minter bases her ICFA claims, arguing that such claims cannot be based on (1) his alleged failure to notify her of her right to cancel; (2) Diamond's failure to perform future work; or (3) Williams's signing of the quitclaim deed.  Both argues that Minter has failed to provide evidence from which a reasonable jury could find that his conduct was the proximate cause of her damages.  Finally, Both argues that Minter has failed to present evidence supporting the elements of a claim of civil conspiracy.

When considering a motion for summary judgment, the Court construes all facts and reasonable inferences in favor of the nonmoving party. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 396 (7th Cir. 2011). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Id.* To find a genuine dispute, "there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## I. ICFA (counts 5 and 6)

The ICFA was enacted to "afford[ ] consumers broad protection by prohibiting any deception or false promise." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 654, 762 N.E.2d 1, 11 (2001) (internal quotation marks omitted). The ICFA provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. To bring a claim under the ICFA, a plaintiff must show (1) an unfair or deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the unfair or deceptive practice; (3) the unfair or deceptive practice occurred in a course of conduct involving trade and commerce; and (4) damages. *See Galvan v. Nw. Mem'l Hosp.*, 382 Ill. App. 3d 259, 263–64, 888 N.E.2d 529, 535 (2008); Miller, 326 Ill. App. 3d at 655, 762 N.E.2d at 11–12. To meet the first element, plaintiff can show that the conduct was either deceptive or unfair. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418, 775 N.E.2d 951, 960 (2002).

8

### A.    Actionable conduct

Both argues towards the end of his brief that any claims regarding unfair or deceptive conduct cannot be based on (1) his alleged failure to notify Minter of her right to cancel; (2) Diamond's failure to perform future work; or (3) Williams's signing of the quitclaim deed.  The Court considers these arguments before addressing whether Both's conduct gives rise to a genuine dispute under the ICFA.

#### 1.    Notice of cancellation

Both first argues that Minter cannot base her claims on his failure to notify her orally of her right to cancel the loan transaction within three days after signing, because he provided her with a written notice that she signed.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 17–18.  Both argues that the right of rescission provided for by the Truth in Lending Act (TILA), 15 U.S.C. § 1635, only requires written notification.  *Id.*  But Minter's claim does not rely on the TILA.  Instead, she relies on a separate federal regulation and an Illinois statute, both of which provide that a seller in a door-to-door sale incurs liability if he "fail[s] to inform each buyer orally, at the time the buyer signs the contract or purchases the goods or services, of the buyer's right to cancel."  16 C.F.R. 429.1(e); *see also* 815 ILCS 505/2B(c).  Thus Minter can base her claims on the fact that she did not receive oral notice.

#### 2.    Promissory fraud

Both also argues that Minter cannot base her claims under the ICFA on Diamond's alleged failure to complete the home improvement work that he agreed to perform.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 22–23.  He contends that this constitutes a claim for "promissory fraud," which he says is not actionable in Illinois.  *Id.*

9

The general rule under Illinois law is that "[m]isrepresentations of intent to perform future conduct, even if made without the present intention to perform, generally cannot sustain a fraud claim." *Colagrossi v. UBS Sec., LLC*, 2015 IL App (1st) 133694-U, ¶ 70. But there is an exception to this rule under which a plaintiff may bring such a claim "where the false promises or misrepresentations are alleged to be the scheme employed to accomplish the fraud." *Id* (internal quotation marks omitted). In other words, if the defendant made a promise of future performance, knowing that he would not perform but intending to use this promise to defraud the plaintiff, the plaintiff can bring a claim of fraud based on this promise. *See Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 33–34, 983 N.E.2d 1044, 1054. Minter has offered evidence that Diamond never intended to adequately perform the construction contract, and made this promise only to defraud her of loan proceeds. Thus a reasonable jury could conclude that these false promises are the basis of the defendants' scheme to defraud. Though Illinois courts have acknowledged that the exception "seems to engulf the general rule," *id.* at ¶ 33, 983 N.E.2d at 1054, it is sufficient to permit Minter to proceed based on Diamond's failure to perform the construction work as promised in their contract.

### 3. Quitclaim deed

Finally, Both argues that Minter cannot base her ICFA claims on Williams's signing of the quitclaim deed because Williams admits that she knew she was signing a deed to transfer her ownership interest in the house to Minter. Def.'s Mem. in Supp. of Mot. for Summ. J. at 23–25. But as Minter points out in her response, she is not making a separate claim based on the signing of the deed itself. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 22. Instead, Minter argues that Both's conduct relating to the quitclaim

deed was also in furtherance of the fraudulent scheme, because Minter could not obtain a reverse mortgage while Williams's name was still on the deed. Minter therefore contends that Both encouraged her ignorance of the effects of the quitclaim deed, and its true purpose, in order to further the fraud. The Court agrees that Both's conduct in relation to the quitclaim deed may be relevant but does not rely on it in reaching its determinations on summary judgment.

## B. Both's conduct

Both primarily argues that, regardless of the actions of the other defendants, his own conduct was neither deceptive nor unfair and therefore cannot support Minter's ICFA claims.

As a general matter, Both contends that Minter cannot support her claims against him because she and Williams repeatedly testified that they do not recall details of the events surrounding this transaction. Minter did testify that she does not remember Diamond or Both, nor does she remember speaking with people about repairs to her house or signing any mortgage documents. Def.'s SUCF, Ex. E (Minter Dep.) at 54:15–56:21, 67:18–20, 98:12–17. But Minter's other testimony indicates that she does have some memory of the events at issue. *See id.* at 55:23–56:7 (indicating that she remembers speaking with Diamond about home repairs three or four years ago but does not speak to him anymore), 97:17–22 (testifying that Diamond came one day to talk about home repairs and told her that it would all be free). In any event, Williams was present when Both notarized the loan documents and has provided her own account of Both's conduct. *See* LaShon Williams Dep. at 224:15–246:13. The fact that both Minter and Williams are unable to recall every detail of the various interactions at

issue in this case is not grounds for granting summary judgment in favor of Both, because they collectively recall sufficient details to give rise to genuine disputes of material fact.

### 1.    Deceptive conduct (count 5)

Both contends that he personally did not make any of the alleged misrepresentations and therefore that he cannot be liable under the ICFA.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 4.  Minter appears to agree that Both did not make any affirmative misrepresentations during the transaction.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 10–11.  But both the ICFA itself and Illinois courts have made clear that omissions of material fact can also lead to liability for consumer fraud.  *See* 815 ILCS 505/2; *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283, 856 N.E.2d 542, 547 (2006).  Minter contends that Both omitted a number of material facts in order to "reinforce[e] and ratify[ ] Mark Diamond's representations" that Minter was applying for a free government program to receive home repairs.  Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 10.  The Court considers these omissions and concludes that a genuine dispute exists regarding whether Both engaged in deceptive conduct under the ICFA.

In arguing that Both's conduct was deceptive, Minter points to the fact that he did not, at the time of notarization, explain the nature of the documents that Minter was signing.  *See* LaShon Williams Dep. at 242:15–18.  Minter also points to the fact that Both did not disclose the fact that he was Diamond's attorney, nor did he inform Minter of the past consumer complaints against Diamond.  *See id.*; Pl.'s Statement of Additional Material Facts Submitted in Opp'n to Summ. J. (SAMF), Ex. A (Both Dep.) at 87:13–14.  Both also does not recall whether he discussed with Minter how she would

like to receive the loan proceeds (electronically or via check). Both Dep. at 126:20–127:15, 252:16–253:9. Finally, Minter points to Both's statements during the notarization, neither of which are misrepresentations, but which Minter contends were designed to reinforce Minter's belief in Diamond's false scheme. Mr. Both told Minter and Williams that he was there so that Minter "could sign the documents for Mark to start the repairs on the house." LaShon Williams Dep. at 244:21–245:4. He also told them that they were not obligated to make any payments under the agreement. Both Dep. at 155:25–156:3. The Court concludes that this evidence is sufficient to permit a reasonable jury that Both deceptively omitted material facts.

In doing so, the Court first wants to emphasize that its conclusion is not based on Both's failure to discuss the true nature of the documents with Minter. Illinois law does not place any affirmative duty on notaries to ensure that a signatory of a contract is aware of its content and has fully and freely consented to its terms. Illinois courts have indicated that a plaintiff in an ICFA case does not need to demonstrate an affirmative duty to disclose in order to sustain a claim based on an omission or misrepresentation. *Chandler v. Am. Gen. Fin., Inc.*, 329 Ill. App. 3d 729, 736, 768 N.E.2d 60, 66 (2002). But to prevail on a claim under the ICFA, the plaintiff must also show that the defendant intended for the plaintiff to rely on his deception. The Court is unwilling to conclude that a notary (even one who is aware of a counterparty's past misconduct), by failing to explain the contents of the document, intends for the signatory to rely on this lack of explanation when deciding whether to sign. This would effectively require all notaries— as well as possibly any other uninterested individual present during the signing of a contract—to personally review the document with the party signing it in order to avoid

liability. This would significantly expand the duty of a notary under Illinois law. Therefore Both's failure in this situation to ensure that Minter understood the nature of the agreement cannot give rise to a claim for consumer fraud.

But the Court finds that a genuine dispute exists regarding whether the remainder of Both's conduct was deceptive and whether he intended that Minter rely on it. First, Minter has provided evidence from which a reasonable jury could infer that Both was aware that Diamond had employed this same scheme in the past and therefore that Minter was another target. As of May 2013, eighty-four consumers had filed complaints with the Illinois Attorney General complaining that Diamond's home repair and loan services were fraudulent. *See* Pl.'s SAMF, Ex. 19. Minter has provided evidence that Both acted as the notary for the loan documents in forty-four of those transactions. *See id.* Further, Diamond has faced at least twelve other lawsuits by consumers alleging that they were defrauded by Diamond in a manner similar to that alleged by Minter. And Minter has provided evidence that Both acted as Diamond's attorney in a number of those matters. *See, e.g.*, Pl.'s SAMF, Exs. 4–6, 8, 10, 12, 14–15.

Both argues that this evidence of Diamond's alleged prior misconduct is inadmissible against him. Def.'s Reply in Supp. of Mot. for Summ. J. at 5–6. The Court disagrees. Federal Rule of Evidence 404(b) bars the use of evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the rule permits the admission of other act evidence for other purposes, such as to prove motive, intent, or knowledge. Fed. R. Evid. 404(b)(2). Courts have held that this rule

permits the use of evidence of a third party's wrongdoing to show the defendant's knowledge of that wrongdoing. *United States v. McCourt*, 925 F.2d 1229, 1233–34 (9th Cir. 1991) (citing cases that "stand for the unremarkable proposition that evidence of a third party's extrinsic offenses is admissible" against a defendant "when relevant to some issue other than propensity"); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 583 (1st Cir. 1987) (finding that "Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant" when used to show that defendant had knowledge of prior crimes of other persons). Here, Minter offers evidence of Diamond's prior misconduct, not to show that Both had a propensity for participating in Diamond's fraud, but as circumstantial evidence that Both had knowledge of Diamond's scheme and the intent to participate in it when notarizing the documents signed by Minter. Thus the evidence is admissible for this purpose. A limiting instruction will be necessary, if Both wants one, to ensure that the jury does not consider the evidence for any other purpose.

Because a reasonable jury could infer that Both was aware of Diamond's scheme and intended to participate in it, the Court concludes that a genuine dispute exists regarding whether Both's remaining omissions were deceptive. One reasonable interpretation of Both's conduct is that he provided very few, albeit truthful, details regarding the transaction and omitted any other discussion in order to perpetuate Minter's erroneous belief that she was to receive home repairs under a free government program. Both told Minter and Williams only that he was there for Minter to sign documents so that Diamond could begin work. He did not discuss the details of the loan but did tell them that they would not be obligated to make any payments under the transaction, arguably encouraging Minter's belief that she was not incurring a personal

obligation to pay for the repairs. Further, Both did not tell them that he had worked with Diamond in the past on very similar transactions that had resulted in consumer complaints. The Court is uncertain whether, absent Both's affirmative statements, his alleged omissions alone would be sufficient to support a claim under the ICFA. But taken together, a reasonable jury could infer that Both provided enough details to ensure Minter's participation and omitted enough to continue the fraud. The Court therefore denies Both's motion for summary judgment on count 5 to the extent that it is based on the elements of a claim under the ICFA.

### 2. Unfair conduct (count 6)

Minter also claims that Both's conduct was unfair in violation of the ICFA. Whether a defendant's conduct is unfair under the ICFA is determined on a case-by-case basis. *Demitro v. Gen. Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 20, 902 N.E.2d 1163, 1168 (2009). In determining whether conduct is unfair, a court considers whether the practice offends public policy; whether it is immoral, unethical, oppressive, or unscrupulous; and whether it causes substantial injury to consumers. *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 804, 844 N.E.2d 995, 1002 (2006). A plaintiff need not satisfy all three criteria to demonstrate that conduct is unfair. *Demitro*, 388 Ill. App. 3d at 902, 902 N.E.2d at 1168.

The Court finds that a genuine dispute exists regarding whether Both's conduct was immoral, unethical, or unscrupulous. Case law does not define these terms, so the Court applies them as they are commonly understood. The term "immoral" is defined as "conflicting with generally or traditionally held moral principles." *Merriam-Webster's Collegiate Dictionary* 580 (10th ed. 1999). "Ethical" is defined as "conforming to

accepted professional standards of conduct." *Id.* at 398. "Scrupulous" is defined as "having moral integrity; acting in strict regard for what is considered right or proper." *Id.* at 1051. As discussed above, a reasonable jury could infer that Both was aware of Diamond's alleged fraudulent scheme to induce Minter to sign a reverse mortgage agreement under the guise of a free government program and then deprive her of the loan proceeds. Further, a reasonable jury could conclude that Both furthered this deception in his statements and omissions when acting as a notary for the transaction. This conduct, if proven to be true, could qualify as sufficiently immoral, unethical, or unscrupulous to support a claim under the ICFA.

Both argues that Minter has not pleaded the existence of any statute supporting this claim nor any "common law that makes a notary liable for everything that happens after the notarization process." Def.'s Mem. in Supp. of Mot. for Summ. J. at 10. But Minter's claim for unfairness under the ICFA plainly does not rely on a claim that the notary is liable for whatever follows notarization. Rather, Minter contends that, given Both's awareness of Diamond's plan and his intent to participate in it, his conduct in perpetuating the scheme is unfair. A reasonable jury could find that Both's conduct was immoral, unethical, or unscrupulous.

Both also argues in his motion that Minter cannot pursue her claim of unfairness under the ICFA because she reasonably could have avoided her injuries. *Id.* at 18–21. Both cites an earlier decision by this Court for the proposition that because Minter could have avoided her injuries, her injury was not substantial and therefore cannot support a claim for unfair conduct under the ICFA. *See id.* at 18–19 (citing *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584 (N.D. Ill. June 2, 2010) (Kennelly, J.)). In

making this statement, however, the Court in *Ciszewski* was considering whether the plaintiff had sufficiently alleged unfair conduct under the substantial injury factor.  *See Ciszewski*, 2010 WL 2220584 at *4.  As stated above, a plaintiff need not meet all three unfairness factors to succeed on a claim under the ICFA.  Thus even if Minter failed to present evidence giving rise to a genuine dispute regarding whether she incurred a substantial injury, denial of summary judgment is still appropriate because a reasonable jury could find that Both's conduct was immoral or unscrupulous.

In any event, Minter's evidence gives rise to a genuine dispute regarding whether she suffered a substantial injury.  Both argues that Minter could have avoided her injury by reading the documents placed in front of her to sign.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 19.  But Minter was inexperienced with real estate transactions and likely relied on the representations by Diamond and Both in deciding to move forward with the transaction.  The standard for substantial injury asks whether the plaintiff *reasonably* could have avoided the injury.  *See Ciszewski*, 2010 WL 2220584, at *4 (citing *Cheshire Mortg. Servs. Inc. v. Montes*, 223 Conn. 80, 113, 612 A.2d 1130, 1147 (1992)).  A reasonable jury could conclude that, given the extent of Diamond's representations and Both's assistance, Minter could not reasonably have been expected to read and reject the loan documents.  Both also argues that Minter could have mitigated her damages by transferring title back to Williams and by refinancing her reverse mortgage back to a conventional mortgage.  Def.'s Mem. in Supp. of Mot. for Summ. J. at 20.  But this argument ignores the fact that Minter's house is now encumbered by a lien of over $100,000, well above the mortgage that she had prior to the transaction.  Thus a reasonable jury could conclude that Minter was substantially injured by Both's conduct.

For these reasons, the Court denies Both's motion for summary judgment on count 6 to the extent that it is based on the elements of a claim under the ICFA.

## C. Proximate cause

Both next argues that Minter cannot demonstrate that his conduct proximately caused her damages because there is no causal link between the two and because the damages were caused by the intervening acts of the other defendants. Def.'s Mem. in Supp. of Mot. for Summ. J. at 11–17. The Court overrules both of these arguments.

First, Both contends that his function as a notary was limited to witnessing and attesting to Minter's signature on the loan documents, which did not cause Minter any harm. *Id.* at 11. But as Minter and Williams have testified, Minter was unaware that she was signing an agreement for a reverse mortgage and that she was thereby taking out a loan on her home. And as the Court previously discussed, a reasonable jury could conclude that Both's statements while performing his notary services were deceptive or unfair and intended to further the scheme to defraud Minter of the equity in her home. Thus a genuine dispute exists regarding whether Both perpetuated Minter's belief that she was applying for a free government program and whether she was in fact harmed by signing the loan documents.

Both then argues essentially that any such belief on Minter's part was unjustified because she was given an opportunity to read the loan documents and had taken out a loan in the past and therefore was experienced in these matters. *Id.* at 12–13. Both relies on *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 657 N.E.2d 1095 (1995), in which the court indicated that parties to a contract have "no right to rely on oral representations changing those terms." *Id.* at 365, 657 N.E.2d at 1103.

19

But the court indicated that this rule applies "where the signer is aware of the nature of the contract." *Id.*, 657 N.E.2d at 1103. Here, Minter has offered evidence that—due to the defendants' conduct—she was unaware that she was signing a contract for a reverse mortgage. Further, the court in *Northern Trust* stated that the rule was "particularly appropriate where the parties to the agreement are sophisticated business persons." *Id.* at 366, 657 N.E.2d at 1103. In contrast, Minter is an elderly woman with a low level of sophistication regarding real estate and loan transactions. Thus Minter had reason to rely on the representations made by defendants outside of the contract.

Both next argues that Minter cannot show proximate causation with respect to him because subsequent acts by other defendants—Diamond's conversion of the loan proceeds and failure to complete the repairs—are the actual cause of her damages. It is true that intervening criminal acts of third parties can sever the causal connection between defendant's conduct and plaintiff's damages. *Hyatt Johnson USA 2004, LLC v. Goldsmith*, 2016 IL App (1st) 151622-U, ¶ 44. But defendant may still be liable when the "criminal acts should reasonably have been foreseen," because a "foreseeable intervening force does not break the chain of legal causation." *Id.* at ¶¶ 44–45. Minter has provided evidence sufficient to give rise to a genuine dispute regarding whether Both reasonably should have foreseen Diamond's conduct, given the business relationship between the two parties and Both's alleged awareness of Diamond's past misconduct in similar settings. A reasonable jury could conclude that Both was a proximate cause of Minter's damages. The Court therefore denies Both's motion for summary judgment on this basis.

### D. Waiver

Finally, Both argues that Minter has waived her right to recover for any alleged fraud by acting in a manner inconsistent with an intent to sue for damages. Def.'s Mem. in Supp. of Mot. for Summ. J. at 23. The case cited by Both provides the standard for waiver in this context: "waiver will apply if a party, after discovering the alleged fraud and with full knowledge of its material aspects, engages in conduct which is inconsistent with an intention to sue." *Kaiser v. Olson*, 105 Ill. App. 3d 1008, 1014, 435 N.E.2d 113, 118 (1981). Both appears to contend that, even taking the facts in the light most favorable to Minter, she must have been aware of the fraud at the time that she signed the loan documents, after being presented with the documents and themselves and the supposedly forged certificate of her HECM counseling. But both Minter and Williams have testified that Minter was unaware that she was taking out a reverse mortgage and that she never read nor understood the documents that she signed. A reasonable jury could conclude that Minter did not have "full knowledge of [the fraud's] material aspects" until much later and therefore that her actions in signing the loan documents were not inconsistent with her intent to sue for damages. The Court denies Both's motion for summary judgment on the basis of waiver.

## II. Civil conspiracy

In count 7, Minter alleges that Both engaged in a conspiracy with Diamond, United, and Bohn to unlawfully deprive Minter of the equity in her home. Compl. ¶¶ 188–193. Both argues generally that there was no agreement or conspiracy and that he has "conclusively refuted" all of the conduct Minter alleges he performed in furtherance of the conspiracy. Def.'s Mem. in Supp. of Mot. for Summ. J. at 21.

In order to show a civil conspiracy under Illinois law, plaintiff must demonstrate "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923, 874 N.E.2d 230, 240 (2007). The Court finds that Minter has provided sufficient evidence to show a genuine dispute regarding whether Both's liability for civil conspiracy. Minter has provided circumstantial evidence from which a reasonable jury could conclude that Both had knowledge of Diamond's alleged scheme to defraud Minter and that he intended to participate in it. And Minter has provided evidence from which a reasonable jury could conclude that Both participated in the scheme through his deceptive or unfair conduct.

Both contends in part that Minter cannot demonstrate the existence of a conspiracy because she has no evidence to support her claim that all of the defendants shared the proceeds of Minter's loan disbursement. But the case law does not suggest that in order to prove conspiracy, plaintiff must show that all co-conspirators shared the profits. The elements of conspiracy require only that plaintiff demonstrate an agreement between two or more persons for the purposes of accomplishing an unlawful scheme. Minter offers evidence—such as Both's prior involvement in Diamond's real estate transactions—from which a reasonable jury could conclude that the defendants agreed to fraudulently deprive Minter of the equity in her home, regardless of whether they split the proceeds of her loan check. The Court therefore denies Both's motion for summary judgment on count 7.

**Conclusion**

For the foregoing reasons, the Court denies Both's motion for summary judgment

[dkt. no. 87]. The case remains set for a status hearing on May 11, 2017 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 9, 2017